

Villanova University School of Law

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-12-2007

# USA v. Rivas

Precedential or Non-Precedential: Precedential

Docket No. 05-3380

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"USA v. Rivas" (2007). *2007 Decisions.* Paper 1389.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1389

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 05-3380

———

UNITED STATES OF AMERICA

v.

JOSE RAMON RIVAS,
also known as RAY,

Jose Ramon Rivas,
                              Appellant

———

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 03-cr-00599-1)
District Judge: Hon. Timothy J. Savage

———

Argued January 18, 2007

Before: SLOVITER, RENDELL, and CUDAHY,[*] Circuit
Judges

(Filed:   March 12, 2007)

———

    [*]  Hon. Richard D. Cudahy, United States Senior Circuit
Judge for the United States Court of Appeals for the Seventh
Circuit, sitting by designation.

Patrick L. Meehan, Esq.
Robert A. Zaumzer, Esq.
Anne Whatley Chain, Esq.          **[ARGUED]**
Andrea B. Grace, Esq.
United States Attorney's Office
615 Chestnut Street
Philadelphia, PA 19106
          *Counsel for Appellee*

Peter Goldberger, Esq.          **[ARGUED]**
Pamela A. Wilk
50 Ritenhouse Place
Ardmore, PA 19003-2276

Louis T. Savino, Jr.
Louis T. Savino & Associates
15th & John F. Kennedy Boulevard
Two Penn Center
Suite 1516
Philadelphia, PA 19102
          *Counsels for Appellant*

_____

OPINION OF THE COURT
_____

CUDAHY, <u>Circuit Judge</u>.

A jury convicted Jose Ramon Rivas of conspiring to distribute crack cocaine in violation of 21 U.S.C. § 846. The court, acting in part because of a prior drug offense for which Rivas had been convicted, sentenced him to 240 months in prison. Rivas now appeals, arguing that his conviction is flawed by numerous alleged errors in his trial and that the district court erred in finding that the prosecution had properly filed and served upon Rivas an information charging the prior drug conviction on the basis of which the government sought to enhance Rivas's sentence. For the reasons given below, we affirm.

I. Background

The government indicted Rivas for conspiring with Darrin Culler and Juan Johnson to distribute crack, and for aiding and abetting Darrin Culler's distribution of approximately 80.1 grams of crack on August 7, 2002. The government's case at trial can be divided into two parts: the testimony of confidential informant Charles Mobley and his chief handler, Philadelphia Police Officer Ronald Jones, who explained a sting operation involving four controlled purchases of crack cocaine near the corner of Reed and 7th Streets in Philadelphia, and the testimony of Rivas's alleged co-conspirators, who had pleaded guilty and were cooperating with the government.

Mobley and Jones described a series of police-monitored crack purchases that occurred on April 25, June 25, August 7 and September 12, 2002. Mobley purchased the crack; Jones observed and searched Mobley and his car before and after and observed the purchases, which were also videotaped. Most of the transactions involved Rivas's alleged co-conspirator Culler. Mobley testified that on April 25 he called Culler and asked to buy an ounce and a half of crack; he met Culler in the 700 block of Reed Street and exchanged government-supplied buy money for crack. (Supp. App. at 20-24.) Mobley similarly purchased two ounces of crack from Culler on June 25, 2002.

Mobley first implicated Rivas in his testimony concerning an August 7, 2002 purchase. Mobley testified that on that day he called Rivas and ordered three ounces of crack. Rivas agreed to supply it and selected the 700 block of Reed for the transaction. When Mobley arrived, both Rivas and Culler were there. They walked to Mobley's car; Rivas got in and exchanged the crack for Mobley's buy money while Culler stood at the driver's window. Then Rivas and Culler left. Officer Jones testified that from his vantage point he could see Culler go to Mobley's driver's side window and see Rivas enter the car's passenger door, but he could not see what was going on inside the car. (App. at 41-42.) The transaction was videotaped, but Mobley admitted on cross-examination that due to the camera angle the tape did not show Rivas getting into Mobley's car. (Supp. App. at 65-66.) Jones testified that when he met Mobley after the buy,

3

Mobley gave him three ounces of crack.

Mobley also testified that Rivas set up, though did not physically participate in, a purchase on September 12, 2002. Mobley called Rivas and asked to purchase crack. Rivas said that he couldn't meet Mobley himself, but that he would send someone named "Voo." Mobley found someone matching Voo's description at the location Mobley and Rivas had agreed upon, and exchanged the buy money for the drugs. After the purchase, Rivas called Mobley to ask if everything had gone well with Voo. Rivas's alleged co-conspirator Johnson, nicknamed "Voo," confirmed his and Rivas's roles in the sale, testifying that the crack he delivered belonged to Rivas and that he only made a small commission on the deal. (App. at 112, 114-15; Supp. App. at 80-82.)

Rivas responded by attacking the credibility of the government's witnesses; Mobley, Culler and Johnson were all heavily impeached by their prior crimes and by lies they told about the details of those crimes while on the stand in the present case. Rivas's strategy made use of Culler and Johnson's guilty plea agreements, which Rivas introduced into evidence. The court instructed the jury that the guilty pleas of the coconspirators were "not evidence of the guilt of any other person, including the defendant." (App. at 107, 167.) The jury acquitted Rivas of the aiding and abetting count, but convicted him of the conspiracy count.

At sentencing, the government sought to increase Rivas's statutory minimum sentence on the basis of a prior felony drug trafficking conviction. On November 6, 2004, a few weeks prior to the trial, the government filed an information charging the prior conviction as required by 21 U.S.C. § 851. After trial Rivas moved to strike the information, contending that it had been "neither filed nor served" on him or his attorney "in accordance with the governing law and rules of procedure." (App. at 181.) He claimed that the information was not "filed" within the meaning of § 851 because, among other things, it bore no signature, "electronic or otherwise," and had failed to comply with a local order governing electronic filing. He also claimed that while the government had faxed the information to his

4

counsel it was required to mail the information under applicable rules, and that his lawyers had never received a copy by mail. The government rejoined that any flaws in the information were excusable and that it had mailed the information as required, even if Rivas's counsel had not received it.

The court denied Rivas's motion to strike. It concluded that the clerk had properly excused any noncompliance with the local electronic filing order and that the government had mailed a copy of the information to Rivas's attorney. The court sentenced Rivas to twenty years in prison–the statutory minimum to which he could be sentenced, given his prior conviction. *See* 21 U.S.C. § 841(b)(1)(A).

Rivas now appeals, alleging that the court erred several times during trial: by failing to strike testimony that Rivas was a target of a drug investigation, by allowing the prosecution to purportedly vouch for its witnesses' credibility, by improperly instructing the jury on the use of the alleged co-conspirators' guilty pleas and by failing to grant a mistrial after the prosecutor suggested that defense counsel was attempting to distract the jury from important issues. He also appeals the denial of his motion to strike the information charging his prior conviction.

II. Discussion

A. Trial Errors

Rivas alleges that his conviction was so heavily tainted by errors that it must be reversed despite his failure to timely object to almost all of the purported errors. Generally, failure to object forfeits claims of error. In criminal cases we may always consider a "plain error that affects substantial rights," Fed. R. Crim. P. 52(b), but several hurdles must be cleared before the judgment is reversed. The defendant must show not only that error affected the outcome of the trial, but that the error was clear or obvious under current law. If these requirements are met, we *may* reverse, if the error "seriously affect[ed] the fairness, integrity, or public reputation of judicial proceedings." *Johnson v. United States*, 520 U.S. 461, 476 (1997); *United States v. Olano*, 507 U.S. 725, 732-35 (1993).

5

In the present case, none of Rivas's claims establish reversible error. We discuss them in turn.

### 1. "Target" Testimony

Rivas first argues that Officer Jones's testimony that Rivas was the target of a drug investigation was improper hearsay and other-crimes evidence. The government called Jones as its first witness and used him to lay out the background of the controlled buys. Jones explained that in the spring of 2002 he was investigating crack distribution in the 700 block of Reed Street. He was then asked:

> Q: Who were the individuals or the people that ended up being the targets of your investigation beginning in April of 2002? What were their names?
> A: Darrin Culler, Ramon Rivas. There was one more, Voo, Juan Johnson. (App. at 68-69.)

Rivas argues that although the government purported to offer this evidence to help the jury understand the subsequent controlled buys, it in fact suggested to the jury that there was unseen evidence that Rivas had committed earlier, uncharged drug crimes, violating the hearsay prohibition of Federal Rule of Evidence 802 and the "other-crimes" evidence prohibition of Rule 404(b). Prosecutors often abuse their right to show the jury the context of police behavior by unnecessarily suggesting that the police had evidence (not presented to the jury) that led them to believe the defendant was involved in crime. *United States v. Price*, 458 F.3d 202, 208 (3d Cir. 2006) (*citing United States v. Sallins*, 993 F.2d 344, 346 (3d Cir. 1993)), *cert. denied,* 75 U.S.L.W. 3353 (U.S. Jan 8, 2007) (No. 06-8006). Testimony that the police "targeted" a defendant for an investigation into a specific type of offense is an example of such abuse. *United States v. Brown*, 451 F.2d 1231, 1234-35 (5th Cir. 1971) (holding that testimony that defendants were on a "primary target list" of drug dealers "known to the Sheriff's department" was prejudicial error). *But see United States v. Scarfo*, 685 F.2d 842, 847-48 (3d Cir. 1982) (holding that there is no error where the jury is not told that the defendant was being targeted or the nature of the crime).

6

The testimony Rivas challenges here is quite difficult to distinguish from the "target list" testimony held inadmissible in *Brown*; if Rivas was targeted in April 2002 it was probably because of information, possibly supplied by Mobley, about earlier drug transactions. The government argues it did not ask whom the investigation targeted in April of 2002, but rather who "*ended up* being the target" of the investigation (App. at 69) (emphasis added), and that therefore the question served only to explain where Jones's story was going. But the question is ambiguous and the jury already knew where Jones was going (if it did not already have the targets' names in the indictment, the prosecutor explained in its opening statement that it would hear evidence that the three sold crack to an informant). (App. at 56-57.) The absence of a legitimate reason for the question suggests the testimony was offered for an illegitimate one. *Sallins*, 993 F.3d at 347; *see also Price*, 458 F.3d at 210-11 (holding that courts must exclude evidence not legitimately needed to explain the background of police behavior).

Nonetheless, it does not matter whether the testimony was improper, because any error was not plain. The government at least suggested a possible legitimate reason for the question (to put the controlled buys in context), indicating that the error was not plain. Further, Rivas bears the burden of demonstrating that the purported error affected the outcome of the trial, *Olano*, 507 U.S. at 734-35, and he has not done so. The government never referred back to the "target" testimony; Rivas claims that it may have briefly suggested in its opening statement that Mobley had told the police incriminating facts about Rivas, but any such suggestion is obscure and unlikely. Even assuming there was a brief suggestion of extra-record evidence against Rivas, the jury was instructed to disregard it. (*See* App. at 148 ("You must make your determination of the facts solely on the basis of the evidence you have heard and seen and not for any reason outside of this courtroom."); *id.* at 150 ("You should confine your considerations to the evidence presented from the witnesses and from any exhibits that have been admitted into evidence.").) We are not convinced that the "target" testimony affected the outcome of the trial, so any error cannot be a ground of reversal.

2. Vouching for Witnesses

7

Next, Rivas contends that the prosecution improperly "vouched" for the truthfulness of its witnesses. Improper "vouching" occurs where a prosecutor suggests that she has reasons to believe a witness that were not presented to the jury. *United States v. Harris*, 471 F.3d 507, 512 (3d Cir. 2006); *United States v. Dispoz-O-Plastics, Inc.*, 172 F.3d 275, 283 (3d Cir. 1999). By contrast, a prosecutor may urge that a witness is trustworthy by arguing from record evidence; vouching occurs only where the prosecutor implicitly refers to information outside the record. *United States v. Walker*, 155 F.3d 180, 187 (3d Cir. 1998).

In the present case the prosecution properly argued that its witnesses were telling the truth. First, in its opening statement the prosecution described Mobley's decision to cooperate with the DEA:

> He decides to come forward and cooperate with the DEA, provide the information he knows about other drug dealers and actively participate in this investigation. To help himself, sure. But also to give DEA an accurate picture of what was going on in the streets with these sales that he was involved in. (App. at 57.)

Rivas urges that the phrase "accurate picture" improperly vouched for Rivas's credibility, but we cannot see why. The prosecution discussed Mobley's possible motives for cooperation and suggested that one of them was a pure moral interest in aiding law enforcement. There was no suggestion that the police cooperate only with honest witnesses, that the prosecution could assure the jury that Mobley's testimony would be accurate, or the like.

Second, Rivas argues that the prosecution vouched for Johnson and Culler in its closing argument when it said that "they came here and they told you the truth about what happened." (App. at 123.) But again, the prosecution did not suggest it knew from extra-record evidence that Johnson and Culler were telling the truth. The conclusion was based upon an argument from their reluctance to speak and their "demeanor," both of which the jury could observe for itself. (*Id.*) The

8

prosecution did not improperly vouch for its witnesses.

### 3. Jury Instructions on Co-Conspirator Guilty Pleas

Rivas claims that the court improperly instructed the jury on the use of Culler's and Johnson's guilty pleas. The court instructed the jury that "Darrin Culler and Juan Johnson may be considered to be alleged accomplices in this case. The fact that an alleged accomplice has entered a plea of guilt in this case, is not evidence of the guilt of any other person, including the defendant." (App. at 167.)

Rivas argues that this instruction improperly permitted the jury to infer his guilt from the guilty pleas. Although it is true that a jury may not do that, *see United States v. Universal Rehabilitation Servs. (PA), Inc.*, 205 F.3d 657, 668 (3d Cir. 2003); *United States v. Gaev*, 24 F.3d 473, 478 (3d Cir. 1994), one is hard pressed to see how the instruction was unclear on this point given that it explicitly said the pleas were not evidence of Rivas's guilt. He suggests that the jury might have used this roundabout reasoning: because the pleas are not evidence of the guilt of "any *other* person," they must be evidence of Culler and Johnson's guilt. But Culler and Johnson pleaded guilty to conspiring with Rivas. *Cf. Universal Rehab.,* 205 F.3d at 671 (Roth, J., dissenting) ("If two defendants allegedly conspired, and one defendant has been convicted or has pleaded guilty, the clear implication is that the other defendant is also guilty.") Aha, Rivas's hypothetical jury concludes, the pleas are therefore evidence that Rivas is guilty, despite the clear instruction stating that they are not. To follow such reasoning the jury would have to possess an unlikely combination of shrewdness (to invent the argument) and obtuseness (to ignore the obvious meaning of the instruction). We have previously held it was error to instruct the jury that although a co-conspirator's guilty plea was not evidence of the defendant's guilt, the plea could nonetheless be used as the jury "saw fit" in accordance with "common sense," remaining studiously vague about what such a use would be. *United States v. Toner*, 173 F.2d 140, 142 (3d Cir. 1949); *see also Universal Rehab.*, 205 F.3d at 670-71 (Roth, J., dissenting) (discussing *Toner*). But that instruction clearly invited misuse of

9

the pleas while paying lip-service to proper evidence law; the alleged flaw in the present instruction is much less clear.

At any rate, even assuming there was error, there was no plain error. The parties only used the pleas appropriately, to impeach Culler and Johnson. Having failed to object to the instruction below, the burden is on Rivas to prove that the jury in fact adopted the unlikely reasoning described above. He has not done so.

### 4. Prosecutorial Misconduct

Finally, Rivas argues that the prosecution improperly "impugn[ed]" the "function and integrity of defense counsel" during its closing argument. During his own closing, Rivas's attorney hammered Mobley, Culler and Johnson for lies they had told the jury about details of their prior crimes, arguing that they were untrustworthy. During rebuttal closing, the prosecutor said:

> In his closing argument, Mr. Savino spent an awful lot of time discussing with you discrepancies and what he terms as mistruths and lies and differences in plea agreements and language. I will return the compliment to Mr. Savino, he's a very good advocate, he does his job well and his job is to take your focus off the issue. (App. at 146.)

Unlike most of the errors Rivas ascribes to the district court, he lodged a timely objection to this one, which was sustained. He then moved for a mistrial, which was denied. Rivas argues that the district court erred in denying his motion for a mistrial, a decision which we review for abuse of discretion. *United States v. Hakim*, 344 F.3d 324, 328 (3d Cir. 2003).

To find that the court abused its discretion in failing to order a mistrial for prosecutorial misconduct, we must first be convinced that the prosecution did in fact misconduct itself. We are not; the comment that defense counsel's "job is to take your focus off the issue" was not, in this context, improper argument.

10

Rivas notes that no lawyer may make "unfounded and inflammatory attacks on the opposing advocate," *Gov't of Virgin Islands v. Isaac*, 50 F.3d 1175, 1185 n.7 (3d Cir. 1995) (*quoting United States v. Young*, 470 U.S. 1, 9 (1985)).  But the government correctly rejoins that attacks on the opposing advocate's arguments and tactics are acceptable, and indeed that attacking and exposing flaws in one's opponent's arguments is a major purpose of closing argument.  *United States v. Lore*, 430 F.3d 190, 213 (3d Cir. 2005) (*citing United States v. Hartmann*, 958 F.2d 774, 785 (7th Cir. 1992)).

If this distinction is unclear, it may be helpful to note that the prohibition against personal attacks on attorneys is rooted less in a sense of decorum than in the same rule underlying the prohibition on vouching: one cannot make arguments unsupported by the record evidence.  *Dispoz-O-Plastics,* 172 F.3d at 285 (holding that the invited response doctrine is triggered only when the defense attacks the prosecution "for reasons unsupported by the evidence"); *United States v. Pelullo*, 964 F.2d 193 (3d Cir. 1992) (holding that attorneys may not accuse each other of "misconduct, such as subornation of perjury, unless there is a foundation in the record to support such charges").  In all of the cases Rivas cites as examples of improper attacks on counsel, the discussion of the attorney's character included some sort of suggestion that the attorney had held back or hidden evidence that was not in the record, or faked evidence that was.  *See Young*, 470 U.S. at 4 (reporting that the defense counsel "intimated that the prosecution deliberately withheld exculpatory evidence"); *United States v. Rios*, 611 F.2d 1335, 1342 (10th Cir. 1979) (reporting that the prosecutor suggested that the defense counsel conspired to fake exculpatory evidence).  Claims that the defendant's lawyer is lying often fall into this category by implying that the defense counsel has extra-record reason to believe her client guilty, such as the defendant confessing to her or the attorney's being part of the crime herself.  *See Berger v. United States*, 295 U.S. 78, 88 (1934) (reporting that the prosecutor stated that defense lawyers "sit up in their offices and devise ways to pass counterfeit money"); *cf. United States v. Gross*, 961 F.2d 1097, 1108 (3d Cir. 1992); *Hartmann*, 958 F.2d at 785 (finding no error where "the prosecution argued that certain statements were lies, not that the

attorneys were liars"). The rule can therefore be implicated even where the prosecution refrains from intemperate language or imputing evil motives to the defense counsel, so long as the prosecution improperly argues from the defense counsel's mental state in a way not supported by record evidence. *See, e.g., United States v. Manriquez-Abrizo*, 833 F.2d 244, 247 (10th Cir. 1987); *cf. United States v. Pungitore*, 910 F.2d 1084, 1142 (3d Cir. 1990) (permitting a prosecutor to present evidence of a defense counsel's involvement in a crime where that evidence was relevant to the charges against the defendant).

In the present case, the prosecution attacked only Rivas's argument, not his counsel. Stating that the defense counsel's "job is to take your focus off the issue" did not suggest that Rivas's lawyer had some mysterious reason to believe him guilty. The comment was a fair attack on Rivas's strategy of impeaching the government's witnesses and arguing for reasonable doubt, which in fact *did* refocus the jury's attention on whether lies about other subjects rendered the witnesses' testimony about Rivas incredible, rather than the details of their testimony about Rivas. The prosecution made the same legitimate argument when it said that Rivas's counsel spent an "inordinate amount of time" cross-examining and arguing on those issues. (App. at 146.)

Even if we were to find prosecutorial misconduct, the district court was still within its discretion to deny a mistrial. A mistrial is not required where improper remarks were harmless, considering their scope, their relation to the context of the trial, the ameliorative effect of any curative instructions and the strength of the evidence supporting the conviction. *United States v. Gambone*, 314 F.3d 163, 179 (3d Cir. 2003) (*citing United States v. Zehrbach,* 47 F.3d 1252, 1265 (3d Cir. 1995)). Here, the remark was a single sentence in the middle of a perfectly permissible line of argument against the defense's impeachment strategy. It is clear that it did not affect the outcome of the trial.[1] Consequently, Rivas's conviction must

_____

[1]Rivas also argues in a footnote that the prosecutor suggested facts not supported by the evidence by saying that

12

stand.

B.  Motion to Strike Information Charging Prior
Conviction

We now turn to Rivas's sentencing challenge, based on the district court's denial of his motion to strike an information charging him with a prior drug felony conviction.  Under 21 U.S.C. § 851(a)(1):

> No person who stands convicted of an offense under this part shall be sentenced to increased punishment by reason of one or more prior convictions, unless before trial . . . the United States attorney files an information with the court (and serves a copy of such information on the person or counsel for the person) stating in writing the previous conviction to be relied upon. . . .  Clerical mistakes in the information may be amended at any time prior to the pronouncement of sentence.

In this case, the government sought to subject Rivas to a statutory minimum sentence of twenty years in prison based on a prior drug trafficking conviction.  Consequently, it filed an information charging that conviction on November 6, 2004, prior to trial.  However, Rivas moved to strike the information as not having been "file[d] . . . with the court" or "serve[d] . . . on the person or counsel for the person" as required by the statute.  (Rivas admits that he was aware of the government's intentions, but we have held that compliance with § 851's filing and service requirements is mandatory, regardless of whether a defendant

_____

witnesses were afraid that Rivas had agents stationed in the courtroom who would harm those who testified against him. Because the argument is made only in a footnote, it is forfeited. *John Wyeth & Bro. Ltd. v. CIGNA Intern. Corp.*, 119 F.3d 1070, 1076 n.6 (3d Cir. 1997).  Even if it were not, it is clear that the prosecutor was not suggesting that witnesses were afraid of being harmed but that witnesses were embarrassed by having to testify to the details of their past crimes on cross-examination. (App. at 144-45.)

has actual notice of the government's plans to enhance his sentence. *United States v. Weaver*, 267 F.3d 231, 247 (3d Cir. 2001) (*citing Harris v. United States*, 149 F.3d 1304, 1307 (11th Cir. 1998)).)

### 1. Filing

Rivas's argument that the information was not "filed" is based on its noncompliance with a standing order of the District Court for the Eastern District of Pennsylvania governing electronic filing. Section 851(a)(1) does not define "file[]," but both parties agree that it incorporates by reference federal and local rules governing filing. *See, e.g., United States v. Severino*, 315 F.3d 939, 945 (9th Cir. 2003) (holding that federal rules are incorporated by reference into § 851(a)). The standing order states that the "user log-in and password required to submit documents . . serve as the Filing User's signature" for any court purpose, but goes on to state that each document filed electronically must, if possible, indicate that it has been electronically filed, must include a signature block and must include the name of the Filing User preceded by the characters "s/" in the space where a written signature would normally appear. Electronic Case Filing Procedural Order ¶8.a, *available at* http://www.paed.uscourts.gov/documents/CMECF/locrules/cvord14.pdf. Although a government attorney properly logged in to submit the information and thus signed it, the document fails to comply with the order's other requirements–it does not indicate that it has been electronically filed, and so forth.

Despite the clerk's acceptance of the information as filed (the reason why Rivas had to bring a motion to strike rather than merely note the absence of any information in the record), Rivas claims that the information's shortcomings render it not "filed" within the meaning of § 851. But if § 851 incorporates by reference local rules and orders governing filing, it should also incorporate the law governing those rules and orders, and we have recognized that a district court has discretion to "depart from the strictures of its own procedural rules where (1) it has a sound rationale for doing so, and (2) doing so does not unfairly prejudice" a party who has relied on the rule. *United States v.*

14

*Eleven Vehicles, Their Equipment & Accessories*, 200 F.3d 203, 215 (3d Cir. 2000); *see also Prof'l Programs Group v. Dept. of Commerce*, 29 F.3d 1349, 1353 (9th Cir. 1994) (holding that a violation of local rules can be excused where it is "so slight and unimportant that the sensible treatment is to overlook it."); *Braxton v. Bi-State Dev. Agency*, 728 F.2d 1105, 1107 (8th Cir. 1984) (same). Here, the clerk accepted the information despite its shortcomings. When the issue was brought to the court's attention, it indicated that it was not concerned with the failure to comply with the order. We find that the signature requirement alone creates an incentive for responsible litigation, *see Scarborough v. Principi*, 541 U.S. 401, 416 (2004), and therefore that the district court had a sound rationale to excuse the other, minor violations of the formatting rules. *See Phoenix Global Ventures, LLC v. Phoenix Hotel Assocs., Ltd.*, 442 F.3d 72, 76 (2d Cir. 2005) (per curiam) (holding that a district court did not abuse its discretion by excusing the inclusion of too-large exhibits and an invalid hearing date in violation of electronic filing requirements); *Somlyo v. J. Lu-Rob Enters., Inc.*, 932 F.2d 1043, 1049 (2d Cir. 1991) (holding that a district court did not err by excusing noncompliance with certain local rules, in part because the rules were "technical" and "designed to regulate, for convenience sake, how papers look"). Further, Rivas admits he has not suffered prejudice. Consequently, the court's decision to permit the information to stand was entirely proper.

Rivas argues that although § 851 generally incorporates local rules, it implicitly precludes normal discretionary exceptions to them. It states that "[c]lerical mistakes in the information may be amended at any time prior to the pronouncement of sentence." 21 U.S.C. § 851(a)(1). Rivas contends that Congress's provision for correction of clerical errors suggests that Congress intended that clerical errors not be simply ignored or excused. Consequently, he urges, if the failures to comply with the local order on electronic filing were "clerical mistakes," they were never corrected and thus cannot be excused. *Cf. Weaver*, 267 F.3d at 247-50 (discussing the correction of erroneous descriptions of prior convictions by an amended information).

Whatever other faults this argument might have, *see*

15

*United States v. Hamilton*, 208 F.3d 1165 (9th Cir. 2000) (excusing a clerical error despite the failure to file a correct amended information); *United States v. Steen,* 55 F.3d 1022 (5th Cir. 1995) (same), we need only address one: the failures to fully comply with the local order were not "clerical mistakes"; these are limited to erroneous descriptions of "the previous convictions to be relied upon." Section 851 is focused on the facts to be included in the information, not on the specific procedures to be used in filing and service (which both parties agree it simply leaves to the general federal procedural rules), and the phrase "clerical mistakes in the information" is best read to refer only to errors in those facts. Different readings would produce awkward inconsistencies, as there seems to be no good reason to excuse certain filing or service errors that are not part of the information itself (and hence not "in the information"), but to forbid any excuse for those that are. We are aware of no cases where the "clerical mistake" provision was addressed to anything other than inaccurate descriptions of prior convictions; indeed, most courts (including this one) strongly distinguish between the procedural filing and service requirements and errors of description, amenable to amendment through § 851's clerical mistakes provision. *See Weaver*, 267 F.3d at 247; *Perez v. United States*, 249 F.3d 1261, 1265-66 (11th Cir. 2001). Consequently we limit the "clerical mistakes" provision to inaccurate descriptions of prior convictions, and hold that the district court properly excused the government's minor deviations from the electronic filing order and treated the information as filed within the meaning of § 851.

## 2. Service

Rivas also argued below that there was insufficient evidence to permit the court to conclude that the government had "serve[d] a copy of [the] information" on him or his counsel. 21 U.S.C. § 851(a)(1). Again, both parties agree that § 851 incorporates the normal rules governing service. Further, Rivas claims that the government had the duty to prove beyond a reasonable doubt that it complied with the service rules. *See id*. § 851(c)(1). This seems doubtful, but the government does not contest it, and at any rate, even assuming Rivas is correct, the court was within its rights to conclude that the government had

16

proved its compliance beyond a reasonable doubt.

The government complied with the service requirements if it mailed a copy to the last known address of Rivas's attorney. Fed. R. Crim. P. 49(b); Fed. R. Civ. P. 5(b)(2)(B).  The record contains a certificate of service, signed by Assistant United States Attorney Andrea Grace, stating that she served the information by "first class mail, postage prepaid." (App. at 204.) Rivas argues that this certificate must be read in light of Grace's unsworn representations before the court that she put the information in an envelope, addressed the envelope, and put it in the United States Attorney's Office's mail room's bin for service by U.S. mail, but did not herself deliver the letter to a U.S. Postal Service mailbox.  But even if that is so, the record still supports finding beyond a reasonable doubt that the information was served. To prove mailing through a mail room, the government must present testimony about how the mail room works. *United States v. Cohen*, 171 F.3d 796, 800 (3d Cir. 1999) (*citing United States v. Hannigan*, 27 F.3d 890, 892-94 (3d Cir. 1994)).  It is not necessary to produce someone who actually works in the mail room so long as the witness has personal knowledge of the mail room's practices. *Hannigan*, 27 F.3d at 893-94.  Grace testified that she had personal knowledge of how the mail room worked: she was familiar with the bin into which she dropped the letter, which was used for letters requiring service by U.S. mail.  This was sufficient personal knowledge of the mail room's practices.  It would have been pointless to require the government to produce a mail room employee to testify to what is already implicit in Grace's statement; when letters go into the mail room's box for U.S. mail service, the mail room generally sends those letters by U.S. mail–that's why they call it the "mail room." *Cf. Hannigan*, 27 F.3d at 894 (finding that mail room testimony was required when a witness was uncertain whether her company sent checks by U.S. mail or private carrier).  The district court did not err by concluding that the information was properly served on Rivas's attorney.

III.  Conclusion

For the foregoing reasons, we affirm Rivas's conviction and his sentence.

17