# United States Court of Appeals
## For the First Circuit

No. 09-1108

UNITED STATES OF AMERICA,

Appellee,

v.

BLAKE FIELDS, a/k/a Streetz,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. William G. Young, U.S. District Judge]

Before

Boudin, Circuit Judge,
Souter,[*] Associate Justice,
and Howard, Circuit Judge.

Dana A. Curhan for appellant.
Mark T. Quinlivan, Assistant United States Attorney, with whom
Michael K. Loucks, Acting United States Attorney, was on brief for
appellee.

November 2, 2011

---

[*]The Hon. David H. Souter, Associate Justice (Ret.) of the
Supreme Court of the United States, sitting by designation.

**Per Curiam**.  Blake Fields was indicted for distribution of cocaine base, 21 U.S.C. § 841(a)(1)(2006), totaling five or more grams, id. § 841(b)(1)(B)(iii), within 1000 feet of a school, id. § 860.  He was convicted by a jury in September 2008 and in January 2009, sentenced to 216 months in prison as a career offender.  He now appeals and his arguments depend on understanding the events as portrayed by the testimony at trial.

On October 4, 2007, members of the Special Investigations Unit of the Boston Police Department directed a cooperating witness ("CW") to place a call to a cell phone number that the officers believed to be used by defendant Blake Fields.  Several calls were then exchanged.  In the course of the conversations, the CW arranged to buy on the same day roughly $300 worth of cocaine base.

The CW, driven by an undercover officer, eventually arrived at a location specified by the person he had called.  An individual--identified by officers at trial as Fields--exited from the passenger side of a van parked across the street and entered the rear seat of the car where the officer and CW were waiting inside.  After a short conversation, the man sold the informant 5.84 grams of cocaine base.  The transaction took place roughly 700 feet from a local school.

At trial, the officer who had driven the CW identified Fields as the man who had sold the drugs to the CW.  Another officer, who knew Fields from prior encounters, also watched the

-2-

events from outside the car and identified Fields as the man who left the van and entered the car to complete the transaction. A third member of the surveillance team parked nearby also identified Fields from a photograph as the man who left the van and entered the car. The CW did not testify, having died before the trial.

In addition, the police made voice recordings of several of the calls, and of the sale itself. Two of the officers mentioned above identified Fields' voice as that of the speaker. The third officer testified that the phone number initially dialed by the CW was for a cell phone registered to a woman who the parties stipulated was Fields' wife. Other witnesses established the nature and weight of the drugs and that the sale had occurred within 1000 feet of a Boston public school for children in the sixth through eighth grades.

Fields rested after the government completed its opening case. His attorney primarily argued in closing that Fields had not been identified as the seller of the drugs, pointing to alleged inconsistencies in testimony by the officers and a lack of additional evidence. The trial had lasted four days; the jury convicted Fields after three hours of deliberation. This appeal followed.

On appeal, Fields makes two arguments.[2] The first is that the trial judge erred because he did not define reasonable doubt in his instructions to the jury, having told counsel in advance that this was his practice. However, the district court repeatedly and clearly emphasized that the government bore the burden of proving Fields' guilt beyond a reasonable doubt and that this standard extended to each element of the crime.

Our decisions hold that "reasonable doubt does not require definition." United States v. Wallace, 461 F.3d 15, 30 (1st Cir. 2006); United States v. Ademaj, 170 F.3d 58, 66 (1st Cir.), cert denied, 528 U.S. 887 (1999); United States v. Rodriguez-Cardona, 924 F.2d 1148, 1160 (1st Cir.), cert denied, 502 U.S. 809 (1991). Rather, "[t]he term reasonable doubt itself has a self-evident meaning comprehensible to the lay juror," United States v. Olmstead, 832 F.2d 642, 645 (1st Cir. 1987), cert denied, 486 U.S. 1009 (1988), and "[m]ost efforts at clarification result in further obfuscation of the concept." Id.

Fields says that nevertheless our decisions to this effect have, in fact, always included some attempt at definition by the trial judge. But it is far from clear that common glosses ("firmly convinced"; "not a fanciful doubt") help the jury much and

_____

[2]After briefing and argument occurred in this case, Fields raised a concern about his sentencing in light of the Fair Sentencing Act of 2010. Fields was sentenced well before the Act became effective and so is outside its scope. United States v. Goncalves, 642 F.3d 245, 251-55 (1st Cir. 2011).

some have been successfully argued by defense counsel to lessen, rather than reinforce, the need for strong evidence of guilt. E.g., United States v. Colon-Pagan, 1 F.3d 80 (1st Cir. 1993). Finally, the Supreme Court has itself said that "the Constitution neither prohibits trial courts from defining reasonable doubt nor requires them to do so as a matter of course." Victor v. Nebraska, 511 U.S. 1, 5 (1994).

Fields' second argument concerns evidentiary rulings. At trial, the government elicited testimony from three different witnesses that Fields had been the target of the sting operation. Defense counsel clearly objected to the first and third instances and arguably objected to the second. The judge overruled the objection in the first instance, but added that who was the target "doesn't prove anything about anybody," and sustained the objection in the third instance, firmly telling the jury to disregard the answer.

Fields describes the statements by government witnesses as improper "bolstering" of the police witnesses, but that is not precisely the problem.[3] While the testimony does explain how the investigation came about, it could also suggest to the jury that the government had prior information about past drug dealing by the

---

[3]The term "bolstering" is commonly used when the prosecutor or another witness vouches for or endorses the credibility of the testifying witness by alluding to information not properly before the jury. E.g., United States v. Perez-Ruiz, 353 F.3d 1, 12-13 (1st Cir. 2003), cert denied, 541 U.S. 1005 (2004).

defendant.  If the objection were presented in these terms, a trial judge might very well think that the benefit of the testimony in clearing up a mystery for the jury was substantially outweighed by its potential prejudicial effect.  See Fed. R. Evid. 403.

Sometimes explaining why the police focused on the defendant is especially relevant (e.g., to refute charges of bad faith by the officer), the explanation is not very prejudicial, or both; but in general we think that this line of questioning about the reasons for investigating the defendant should be discouraged. We have so indicated on prior occasions,[4] although not regarding similar questions as plain error in the absence of a proper objection and when a cautionary instruction was given.  United States v. Colón-Díaz, 521 F.3d 29, 34-35 (1st Cir. 2008).

But if ever there were a case in which the answers did not alter the result, this is that case so, if error at all, it was patently harmless.  See United States v. Hicks, 575 F.3d 130, 143 (1st Cir.), cert denied, 130 S. Ct. 647 (2009).  The inference of prior crimes was itself only indirect and, in addition, the district judge made statements to the jury in both the first and third instances of the targeting testimony that the answers made no

---

[4]United States v. Benitez-Avila, 570 F.3d 364, 368-69 (1st Cir.), cert denied, 130 S. Ct. 429 (2009); United States v. Lamberty, 778 F.2d 59, 60-61 (1st Cir. 1985); see also United States v. Rivas, 493 F.3d 131, 136-137 (3d Cir. 2007).

difference to the central question before the jury, namely, whether Fields was the person who had sold the drugs near the school.

Much more important, the evidence of Fields' guilt was very strong--eye-witness testimony from three police officers, voice identification of the recordings from two officers and the cell phone records.  And the evidence was neither countered with other evidence nor meaningfully impeached.  Against this background, no jury--with or without the disputed testimony--could have had a reasonable doubt about Fields' guilt.

<u>Affirmed</u>.