NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-4651
_____

UNITED STATES OF AMERICA

v.

JOHN L. CHAFFO, JR.,

Appellant
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 2-09-cr-00035-002)
District Judge:  Honorable Donetta W. Ambrose
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
October 25, 2011

Before:  FISHER, VANASKIE and ROTH, *Circuit Judges*.

(Filed: November 17, 2011)
_____

OPINION OF THE COURT
_____

FISHER, *Circuit Judge*.

John L. Chaffo, Jr. ("Chaffo") appeals his judgment of conviction and sentence for

wire fraud and conspiracy to commit wire fraud in violation of 18 U.S.C. §§ 1343 and

1349.  For the reasons stated below, we will affirm.

## I.

We write exclusively for the parties, who are familiar with the factual context and legal history of this case.  Therefore, we will set forth only those facts necessary to our analysis.

On July 14, 2009, a grand jury in the Western District of Pennsylvania returned a Superseding Indictment charging Chaffo with eleven counts of wire fraud and two counts of conspiracy to commit wire fraud.  The following facts were elicited at trial, which began on June 22, 2010.

From 2004 to 2007, Michael Dokmanovich, a mortgage broker, worked with John Orth, Bernardo Katz, and Daniel Smithbower to orchestrate a series of "no-money-down" real estate transactions with subprime borrowers.  The transactions were designed to induce lenders to loan funds to subprime borrowers, and to provide *excess* funds above and beyond what true property values and borrower profiles warranted, through a series of false representations in sales agreements and loan applications.  The false representations included, *inter alia*, artificially inflated property appraisals, sales prices and borrowers' incomes, as well as down payments and second mortgages which did not actually exist.  The down payments and second mortgages played a particularly critical role in convincing lenders that borrowers had "skin in the game" and were less likely to default, thereby inducing the decision to extend loans.  After a deal had been closed, Dokmanovich would receive fees, sellers would receive payment, and buyers would

receive cash back based on the inflated sales prices and loans. Throughout this period, Dokmanovich worked as the broker, while Orth, Katz, and Smithbower all sold properties; a number of buyers, including Smithbower, were involved.

Chaffo served as the closing attorney for fifty-nine of the sixty deals orchestrated by Dokmanovich. Chaffo had twenty-three years of experience providing services as a closing attorney for over seven thousand real estate transactions. Chaffo's responsibilities as closing attorney included overseeing the signing of all closing documents and completing a HUD-1 Settlement Statement ("HUD-1") setting forth the terms of each transaction. On each HUD-1 Chaffo signed, he acknowledged that "The HUD-1 Settlement Statement which I have prepared is a true and accurate account of this transaction. I have caused the funds to be disbursed in accordance with this statement." Lenders relied on the HUD-1s to verify the accuracy of corresponding loan applications and sales agreements, to determine whether to make a loan and for how much, and to certify that loans were properly disbursed.

All closings took place in Chaffo's office. Chaffo oversaw the false representation of down payments and second mortgages, often instructing participants on how to proceed. He personally copied checks that represented down payments in order to show them to lenders, but then returned the checks for borrowers to destroy. In his capacity as closing attorney, Chaffo also distributed funds after loans were received in accordance with the reality of a transaction, rather than as represented on the HUD-1s, sales

3

agreements, and loan applications. Nonetheless, Chaffo signed off on all of the settlement documents and HUD-1s which stated otherwise, and reassured buyers when they became suspicious. For his work, Chaffo was paid his normal rates and fees.

Based on their roles in the Dokmanovich deals, Smithbower and Orth pleaded guilty to conspiracy charges and testified for the Government at Chaffo's trial. Dokmanovich also pleaded guilty, but did not testify for either side. The Government put on a total of eighteen witnesses, including Patricia Lindsey, a real estate underwriting and mortgage fraud expert. On July 6, 2010, Chaffo was convicted on all but two counts of wire fraud, and sentenced to fifty-seven months' imprisonment, followed by a three-year term of supervised release. Chaffo timely appeals.

## II.

The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction pursuant to 28 U.S.C. § 1291.

Chaffo alleges four grounds for overturning his conviction, which we address in turn: the use of co-conspirators' guilty pleas as substantive evidence of his guilt; the admission of opinion testimony by Government witnesses as unhelpful to the jury; sufficiency of the evidence; and the District Court's failure to instruct the jury on the scope and meaning of "honest services fraud" under 28 U.S.C. § 1346.

We normally review a district court's decision regarding the admissibility of evidence for abuse of discretion. *United States v. Serafini*, 233 F.3d 758, 768 n.14 (3d

4

Cir. 2000). On such grounds, a "non-constitutional error at trial does not warrant reversal where 'it is highly probably that the error did not contribute to the judgment.'" *United States v. Stadtmauer*, 620 F.3d 238, 265-66 (3d Cir. 2010) (quoting *United States v. Helbling*, 209 F.3d 226, 241 (3d Cir. 2000)). To the extent that a ruling was based on an interpretation of the Federal Rules of Evidence, our review is plenary. *Id.* at 271.

However, where the defendant failed to lodge a contemporaneous objection, we review for plain error. *United States v. Anderskow*, 88 F.3d 245, 249 (3d Cir. 1996). Additionally, where, as here, the defendant failed to preserve a sufficiency of the evidence objection, we will reverse on such grounds only for plain error. *United States v. Kennedy*, 638 F.3d 159, 168 (3d Cir. 2011). When reviewing the sufficiency of the evidence for plain error, "we must view the evidence in the light most favorable to the government, and will sustain the verdict if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (quoting *United States v. Leahy*, 445 F.3d 634, 657 (3d Cir. 2006)).

### III.

Chaffo's first challenge raises the issue of whether Smithbower's and Orth's guilty pleas were improperly used to prove his guilt. "We have repeatedly held that the government may [not] introduce a witness's guilty plea . . . as substantive evidence of a defendant's guilt." *United States v. Universal Rehab. Servs. (PA), Inc.*, 205 F.3d 657, 668 (3d Cir. 2000). However, a witness's guilty plea is admissible for other purposes,

5

such as informing the jury's assessment of witness credibility and bias, rebutting any notions of selective prosecution, or substantiating a witness's personal knowledge of the "defendant's misdeeds," *United States v. Gaev*, 24 F.3d 473, 476-77 (3d Cir. 1994), so long as any lingering "prejudicial effect" is "cured through a curative instruction to the jury." *Universal Rehab.*, 205 F.3d at 668. When a proper curative instruction has been issued, we do not ascribe a prejudicial understanding to the jury if doing so would require jurors to "possess an unlikely combination of shrewdness (to invent the argument) and obtuseness (to ignore the obvious meaning of the instruction)." *United States v. Rivas*, 493 F.3d 131, 138 (3d Cir. 2007).

Although it is far from clear that Chaffo objected to the contested use of these guilty pleas, we need not determine whether Chaffo properly preserved the issue because, even under an abuse of discretion standard, the jury instructions were sufficient to cure any prejudicial effect. The District Court specifically instructed the jury that although it had "heard evidence from certain witnesses who pled guilty to charges arising from events that are the subject of this trial," it "*must not consider their guilty pleas as any evidence of Mr. Chaffo's guilt*." The Court went on to instruct that jury that it could "only consider the guilty pleas for credibility purposes, to eliminate any concern that Mr. Chaffo has been singled out for prosecution," and "to explain how the witness came to possess detailed, first-hand knowledge of the events." These instructions were clear and unequivocal; to ignore them, the jury would need to possess both the "shrewdness" and

6

"obtuseness" which we decline to attribute to it. *See Rivas*, 493 F.3d at 138; *United States v. Gambino*, 926 F.2d 1355, 1363-64 (3d Cir. 1991). Accordingly, even assuming that Chaffo preserved his objections, it is highly probable that the challenged testimony did not contribute to the judgment. *See Stadtmauer*, 620 F.3d at 265-66.

Chaffo's second argument challenges the testimony of Government witnesses Lindsey and Orth as unhelpful to the jury. Chaffo preserved his objection to Lindsey's testimony, so we review the challenged statement for abuse of discretion. *See Anderskow*, 88 F.3d at 249. However, Chaffo failed to object contemporaneously to Orth's testimony,[1] and therefore plain error review is appropriate. *See id.*

First, we will address the challenge to Lindsey's expert testimony under Rule 702 of the Federal Rules of Evidence.[2] Rule 702 provides the threshold requirements for admission of expert testimony, including that the expert's "specialized knowledge will help the trier of fact to understand the evidence or determine a fact in issue." Fed. R.

---

[1] Although the Government concedes that Chaffo objected to Orth's testimony, we note that the objection rested on different grounds from that which he asserts on appeal, making plain error review the proper standard. *See United States v. Stadtmauer*, 620 F.3d 238, 264 n.31 (3d Cir. 2010).

[2] Chaffo's argument also sounds in Federal Rule of Evidence 704's treatment of testimony on an "ultimate issue," but since Chaffo insists that we focus solely on helpfulness under Rule 702, we do not discuss that aspect of the testimony. Nonetheless, we note that accepting his argument would be inconsistent with our "liberal policy of admissibility," *United States v. Schiff*, 602 F.3d 152, 173 (3d Cir. 2010), and would revert to the superficial constraints of the "ultimate issue" regime. *See* Fed. R. Evid. 704 advisory committee's note.

Evid. 702. We have always allowed expert testimony which assists the trier of fact in understanding complex transactions that lie outside "the common knowledge of the average juror." *United States v. Watson*, 260 F.3d 301, 307-08 (3d Cir. 2001); *see Stadtmauer*, 620 F.3d at 269-70. That such testimony might sound like legal terminology does not diminish its helpfulness, unless it simply offers legal conclusions in the form of an opinion. *See id.* at 270 (citing *United States v. Scop*, 846 F.2d 135 (2d Cir. 1988)); Fed. R. Evid. 704 advisory committee's note ("Rules 701 and 702 . . . afford ample assurances against the admission of opinions which would merely tell the jury what result to reach . . . . They also stand ready to exclude opinions phrased in terms of inadequately explored legal criteria. Thus the question, 'Did T have capacity to make a will?' would be excluded, while the question, 'Did T have sufficient mental capacity to know the nature and extent of his property and the natural objects of his bounty and to formulate a rational scheme of distribution?' would be allowed.").

It is difficult to comprehend how Lindsey's testimony was unhelpful in this case, because complex mortgage transactions lie well beyond the common experience of the average juror. Perhaps in recognition of this, Chaffo relies on a single exchange, where the Government asked Lindsey whether, "based on what [she knew], [wa]s what [she had] seen consistent with misrepresentation by a closing agent in a settlement transaction." Lindsey responded that, "based on the information [she] was given, there was misrepresentation in order to lead or induce the lender to close these transactions."

8

Citing *United States v. Scop*, 846 F.2d 135 (2d Cir. 1988), Chaffo asserts that this was not helpful because "misrepresentation" is similar to the "false representation" terminology used in the wire fraud statute. *See* 18 U.S.C. § 1343. In *Scop*, the Second Circuit found that a Securities and Exchange Commission investigator's testimony violated Rule 702 because his repeated use of terms such as "scheme to defraud" embodied legal conclusions, thereby usurping – rather than aiding – the jury. 846 F.2d at 139-40. Chaffo similarly attempts to characterize the term "misrepresentation" as a legal conclusion.

We do not find his argument persuasive. *Scop* has no bearing where the challenged testimony was isolated and not couched in the language of the criminal statute. *See United States v. Hoffecker*, 530 F.3d 137, 171-72 (3d Cir. 2008) (distinguishing *Scop* and finding testimony helpful where calling program a "scam" was not legal opinion or couched in statutory language); *United States v. Duncan*, 42 F.3d 97, 101-02 (2d Cir. 1994) (distinguishing *Scop* and finding testimony helpful where, though it "came close to tracking the object of one of the charged conspiracies," it was a single occurrence and did not repeat exact statutory language). The challenge here boils down to a single word of Lindsey's lengthy testimony which, though reminiscent of statutory language, was not couched in it, and therefore falls far short of usurping the jury's role. Accordingly, we conclude that Lindsey's statement did not fall outside of Rule 702's requirements and, in any event, constitutes harmless error in light of the comprehensiveness of her remaining testimony.

9

Co-conspirator Orth testified that Chaffo was "part of the scheme." Chaffo now asserts that this constituted unhelpful lay testimony, in violation of Federal Rule of Evidence 701. Like Rule 702, Rule 701 provides a threshold requirement for lay opinion testimony, which must be "helpful to a clear understanding of the witness' testimony or the determination of a fact in issue." Fed. R. Evid. 701(b). A lay witness may not offer an opinion of the defendant's subjective state of mind where the jury is equally capable of making such an inference. *Anderskow*, 88 F.3d at 250-51. However, if such testimony is not a "lay opinion," *id.* at 249, or helps the jury to understand the witness's own testimony, then Rule 701 is not implicated. *Stadtmauer*, 620 F.3d at 265.

Orth's testimony toes the line. Although the Government contends that Orth did not offer an opinion, his statement that Chaffo "was part of the scheme" could entail a judgment as to Chaffo's subjective belief and intent regarding the Dokmanovich transactions. However, we need not decide whether Rule 701 is implicated because, even assuming that it is, admission of his statement does not constitute "egregious error or a manifest miscarriage of justice." *Anderskow*, 88 F.3d at 249 (internal marks and citations omitted). In light of the "mountain of circumstantial evidence" offered by both Orth and seventeen other Government witnesses, *see id.* at 251, there was overwhelming evidence from which the jury could establish Chaffo's knowledge of and participation in the conspiracy. Accordingly, we find no plain error.

Chaffo next challenges the sufficiency of the evidence underlying his conviction on the grounds that the Government failed to prove that he knew of and willfully participated in the fraudulent scheme, as is required for conspiracy to commit wire fraud. *See United States v. Pearlstein*, 576 F.2d 531, 541 (3d Cir. 1976). Although independent misrepresentations by an individual defendant will not alone establish knowledge of and intent to participate in a broader scheme to defraud, *see id.* at 541, jurors may infer such knowledge and intent from circumstantial evidence. *See*, *e.g.*, *United States v. Riley*, 621 F.3d 312, 333 (3d Cir. 2010). Moreover, "[t]here is no requirement . . . that the inference drawn by the jury be the only inference possible or that the government's evidence foreclose every possible innocent explanation." *United States v. Iafelice*, 978 F.2d 92, 97 n.3 (3d Cir. 1992). Chaffo failed to move for a judgment of acquittal at the close of trial, so we review for plain error. *United States v. Gaydos*, 108 F.3d 505, 509 (3d Cir. 1997).

The evidence amply supports the jury's finding of the requisite knowledge and intent. The Government presented eighteen witnesses who described the scheme and Chaffo's role in it, from which the jury learned that Chaffo bore responsibility for the HUD-1 statements sent to lenders before closing in order to obtain financing for the fraudulent deals. Upon Chaffo's instruction and approval, these statements made fraudulent representations that induced lenders to loan more money than warranted by true property values. The evidence showed that Chaffo knew that the required down payments had not been made and that second mortgages had not been obtained, even

11

though the HUD-1s indicated otherwise. Further, unlike the independent misrepresentations at issue in *Pearlstein*, where the defendants' statements had no ties to the alleged conspiracy, 576 F.2d at 541, Chaffo was intricately involved in the deals at issue here, and effectively instructed his co-conspirators on how best to induce the lenders to approve the loans. And based on the repeated misrepresentations and deals made in the two schemes, the jury could conclude that this was not a simple oversight or mistake, but rather a calculated and deliberate decision to participate. The jury could therefore infer Chaffo's knowledge of and intent to participate in the scheme, and he has not met his "very heavy burden" in persuading us otherwise. *United States v. Kellogg*, 510 F.3d 188, 202-03 (3d Cir. 2007).

In a final foray, which he makes *pro se*, Chaffo argues that his conviction rested on 28 U.S.C. § 1346, and consequently, the District Court erred in failing to instruct the jury as to the scope and meaning of honest services fraud. *See United States v. Turcks*, 41 F.3d 893, 898 (3d Cir. 1994) (discussing proposition that "the possibility that the jury rested its general verdict on the one improper theory among multiple proper theories requires reversal"). Chaffo failed to object on these grounds at trial, so we review for plain error. *See Anderskow*, 88 F.3d at 249. Even construing his supplemental brief as liberally as possible, we find this contention to be meritless. First, Chaffo was indicted, tried and convicted solely under the wire fraud statute, and therefore his assertion that the jury may have relied on an alternative theory of guilt is simply not supported by the

12

record.  *See United States v. Leahy*, 445 F.3d 634, 655 (3d Cir. 2006).  Second, Chaffo

mistakenly assumes that the Government's mention of fiduciary duties converts the

object of his fraud from money or property, as is required under § 1343, to honest

services.  However, the Government based its case on the funds Chaffo received via wire

transfers in connection with the property sales at issue and the financial losses of the

victims.  Therefore, Chaffo's argument must be rejected.

III.

For the foregoing reasons, we will affirm the judgment of the District Court.