PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-4088
_____

UNITED STATES OF AMERICA

v.

JACE EDWARDS,
Appellant

_____

On Appeal from the District Court
of the Virgin Islands
District Court No. 3-14-cr-00007-001
District Judge: The Honorable Curtis V. Gomez

Argued May 20, 2015

Before: McKEE, *Chief Judge*, SMITH, and SCIRICA,
*Circuit Judges*

(Filed:  July 6, 2015)

Nelson L. Jones               **[ARGUED]**
Ronald Sharpe
Office of United States Attorney
5500 Veterans Building, Suite 260
United States Courthouse
St. Thomas, VI  00802

       *Counsel for the Appellee*

Alvin E. Entin                 **[ARGUED]**
Entin & Della Fera
110 Southeast Sixth Street
Suite 1970
Fort Lauderdale, FL  33301

       *Counsel for the Appellant*

_____

OPINION

_____

SMITH, *Circuit Judge.*

Defendant Jace Edwards was convicted of attempted possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 846, but was acquitted of an accompanying conspiracy charge under § 846. Edwards argues that the Government violated his Fifth Amendment rights by repeatedly referring to Edwards's post-arrest, post-

*Miranda* silence in the Government's case-in-chief and during closing arguments. We agree. Because the error was not harmless, we will vacate Edwards's conviction and remand for a new trial consistent with this opinion.

## I.

In the early morning of October 23, 2011, law enforcement arrested Edwards while he was in possession of a suitcase containing several packages of apparent cocaine. Edwards had acquired the suitcase from a motel room occupied by Thomas Bruce. Bruce had been arrested the previous day in Atlanta's Hartsfield-Jackson Airport after arriving from the Virgin Islands with several packages of cocaine stashed in his carry-on bag. Upon his arrest, Bruce agreed to participate in a controlled delivery. At law enforcement's direction, Bruce informed co-conspirator Michael Samuels by phone that Bruce would be waiting in a nearby motel. Samuels told Bruce to expect an individual by the name of "Mr. Dred."

Soon thereafter, Edwards arrived at Bruce's motel room. Testifying at trial pursuant to a plea deal, Bruce claimed that Edwards identified himself as Dred. Edwards stated that he was there for six kilograms of cocaine. Bruce further testified that Edwards spoke with Samuels by phone upon Edwards's arrival. Bruce then showed Edwards six kilograms of apparent cocaine in Bruce's suitcase.[1] Edwards

---

[1] Law enforcement replaced the actual cocaine in Bruce's suitcase with an imitation substance before conducting the controlled delivery.

3

took the suitcase and exited the motel room, whereupon law enforcement arrested him.

Edwards, testifying in his own defense, presented a very different story of what happened in Bruce's motel room. By Edwards's account, he received two calls from an associate asking Edwards to move an individual from the motel to a different hotel.[2] Upon arriving at Bruce's room, Edwards told Bruce that "Dred" had sent him. Edwards did not identify himself as Dred, but on cross examination, Edwards acknowledged that others had referred to him as Dred in the past. Nevertheless, according to Edwards, he had exited the motel room with Bruce's suitcase at Bruce's direction without observing the suitcase's contents and without any other knowledge of the drugs.

After issuing him a *Miranda* warning, law enforcement questioned Edwards. Agents opened Bruce's suitcase and showed Edwards its contents, but Edwards did not respond. Instead, Edwards invoked his right to remain

---

[2] Our review of Edwards's testimony revealed that the District Court may have erroneously excluded Edwards's descriptions of what he was told on these phone calls. The District Court considered these out-of-court statements to be inadmissible hearsay. But a statement is hearsay only if it is offered "to prove the truth of the matter asserted." Fed. R. Evid. 801(c)(2). To the extent Edwards was offering the statements made to him to explain why he went to Bruce's motel room—that is, for the statements' effect on the listener—those statements were not offered for their truth. Therefore, they were admissible for a non-hearsay purpose.

silent.  At trial, the Government repeatedly sought to use Edwards's silence after he was Mirandized as substantive proof of guilt as well as for impeachment purposes.  Over Edwards's objection, the Government emphasized in its closing that Edwards had remained silent after law enforcement showed him the contents of the suitcase, suggesting a culpable state of mind.  The Government in its brief and at oral argument concedes that this was error under *Doyle v. Ohio*, 426 U.S. 610 (1976), but urges that the error was harmless.[3]

## II.

"*Miranda* warnings carry the Government's 'implicit assurance' that an arrestee's invocation of the Fifth Amendment right to remain silent will not later be used against him." *Gov't of the V.I. v. Martinez*, 620 F.3d 321, 335 (3d Cir. 2010) (quoting *Gov't of the V.I. v. Davis*, 561 F.3d 159, 163–64 (3d Cir. 2009)).  Therefore, it is a violation of the Fifth Amendment and due process "for a prosecutor to cause the jury to draw an impermissible inference of guilt from a defendant's post-arrest silence" after a defendant is Mirandized.  *Id.* (quoting *Hassine v. Zimmerman*, 160 F.3d 941, 947 (3d Cir. 1998)); *see also United States v. Shannon*, 766 F.3d 346, 354 (3d Cir. 2014) ("[T]he rights secured by *Doyle* apply in equal effect 'to federal prosecutions under the Fifth Amendment.'" (quoting *United States v. Agee*, 597 F.2d 350, 354 n.11 (3d Cir. 1979))).  But *Doyle* errors can be

---

[3] The District Court had jurisdiction pursuant to 18 U.S.C. § 3231.  We have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

5

harmless if the Government "prove[s] beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *Davis*, 561 F.3d at 165 (quoting *Chapman v. California*, 386 U.S. 18, 24 (1967)). This analysis requires an examination of "the totality of the circumstances" to determine whether Edwards's guilty verdict "was surely unattributable to the error," or instead whether there was a "reasonable possibility" that the error contributed to the jury's decision. *Martinez*, 620 F.3d at 337–38 (quoting *Davis*, 561 F.3d at 165–66).

Here, the Government has failed to meet its burden. The Government's references to Edwards's silence were not made in passing. Indeed, after first seeking to elicit testimony in its case-in-chief regarding Edwards's post-*Miranda* silence, the Government in closing asked the jury directly to draw the very inference of guilt that *Doyle* and its progeny forbid. Despite some evidence suggesting that Edwards's exculpatory story was not plausible, the Government's case depended in large part on Bruce's recounting of what happened in his motel room. Thus, the credibility of Edwards's competing story was crucial to the outcome of the case. That credibility was undermined by the Government's insistence that if Edwards was truly unaware of the contents of Bruce's suitcase, he would have waived his Fifth Amendment rights. Under these circumstances, a new trial is required.

Nor did the District Court's belated and ineffective curative instruction after the parties' closings had been completed mitigate the effects of the Government's conduct. The District Court instructed the jury that "[t]o the extent

6

there is an inclination of any defendant to not say something, you cannot hold that against the defendant for not saying something." SA-0393. But this instruction came only after the District Court had overruled Edwards's contemporaneous objection to the Government's use of his post-*Miranda* silence during its closing statement.[4] Thus, the District Court's instructions were not the "proper and immediate action" necessary to avoid a *Doyle* violation in this case. *See Greer v. Miller*, 483 U.S. 756, 764 n.5 (1987).

Further, the District Court had previously given contradictory instructions to the jury before closings that "what a person does, says or fails to say or do may indicate the state of mind in which the person did the act." SA-0343. And the District Court instructed the jury that it could "consider any statements made and acts done or omitted by the defendant" to determine whether Edwards acted with the requisite knowledge of the contents of Bruce's suitcase. SA-0344. In this case, "[i]t is rather easy to see" how the District Court's instructions "might, in fact, have contributed to the jury's verdict: in the face of equivocal evidence of [Edwards's] intent, the jurors were invited by the District Court to consider the statements that he failed to make." *See United States v. Waller*, 654 F.3d 430, 439 (3d Cir. 2011). Considering the Government's emphasis on Edwards's post-*Miranda* silence and "the manifest importance of immediate curative instructions whenever a defendant's post-*Miranda*

---

[4] Edwards did not renew his objection after the District Court *sua sponte* issued its curative instruction. But the Government does not argue that we should review this case for plain error, so we apply harmless-error review.

7

warning silence is mentioned before the jury," *Martinez*, 620 F.3d at 339 n.15, we hold that the violation of Edwards's Fifth Amendment rights was not harmless.

## III.

For these reasons, we will vacate Edwards's conviction and remand for a new trial. We need not reach the remaining issues Edwards raises on appeal.[5]

---

[5] In that regard, Edwards argues that the District Court erroneously admitted Bruce's testimony as to statements Edwards made in Bruce's motel room, and erroneously declined to grant Edwards minimal-participant status at sentencing. We note, however, that a statement "offered against an opposing party" that "was made by the party in an individual or representative capacity" is not hearsay, regardless whether the statement was also "made by the party's coconspirator during and in furtherance of the conspiracy." Fed. R. Evid. 801(d)(2)(A), (E). Further, if the District Court at sentencing is again faced with determining whether Edwards is entitled to a downward departure for a mitigating role, the District Court should consider the factors we outlined in *United States v. Headley*, 923 F.2d 1079, 1084 (3d Cir. 1991) (citing *United States v. Garcia*, 920 F.2d 153 (2d Cir. 1990)), in exercising its "broad discretion." *United States v. Isaza-Zapata*, 148 F.3d 236, 238–39 (3d Cir. 1998).