NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-1770
_____

ACCLAIM SYSTEMS, INC.,

Appellant

v.

INFOSYS, LTD.;
VEDAINFO, INC.
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
(Civ. Action No. 2-13-cv-07336)
District Judge: Honorable Gene E.K. Pratter
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
January 19, 2017
_____

Before: FISHER[1], HARDIMAN, and GREENAWAY, JR., *Circuit Judges*.

(Opinion Filed: February 9, 2017)

_____

OPINION[*]
_____

---

[1] Honorable D. Michael Fisher assumed senior status on February 1, 2017.
[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

GREENAWAY, JR., *Circuit Judge*.

Acclaim Systems, Inc. ("Acclaim") appeals a grant of summary judgment in favor of Infosys Ltd. ("Infosys") in this business dispute. Acclaim asserts that Infosys intentionally interfered with non-compete contracts governing four IT consultants when it contracted to work with them. Because the record does not show that Infosys actually knew of the non-compete clauses, we will affirm.

## I. FACTUAL BACKGROUND

Acclaim and Infosys are providers of IT services. Both consult with Time Warner Cable ("TWC"). This dispute concerns the two companies' work with TWC on a particular project related to the Sales Force Dot Com ("SFDC") client relationship platform. In the spring of 2013, Acclaim (and another company, Acumen, which is not a party to this litigation) was working with TWC on the SFDC project. But TWC reached out to Infosys, asking it to present on its own SFDC capabilities.[2] Looking for cost savings—made larger by Infosys's new pricing strategy, which offered volume discounts

---

[2] By and large, Acclaim does not contest the accuracy of the facts presented by Infosys. Rather, it asserts that much of this factual material is inadmissible hearsay. Like the District Court, we find that the contested statements are mostly not hearsay at all, as they were not offered for the truth of the matter asserted. Fed. R. Evid. 801(c)(2). Rather, they generally were offered "for the statements' effect on the listener." *United States v. Edwards*, 792 F.3d 355, 357 n.2 (3d Cir. 2015). This is particularly true given that our opinion turns on the knowledge of Infosys: the recipient of the purported hearsay. For example, Acclaim challenges as hearsay testimony by an Infosys representative regarding TWC's request to keep on the four consultants at issue in this litigation. But in this case, it is Infosys's motivations that are at issue, not the truth of TWC's request. This opinion presents the undisputed facts cognizant of Acclaim's hearsay challenges, but mostly rejects them.

2

to TWC—TWC decided to transfer the SFDC project from Acclaim and Acumen to Infosys.

TWC began the transition process from Acclaim to Infosys in the summer of 2013. Infosys originally proposed using two on-site consultants located in Charlotte, North Carolina, with the rest of its team based in India. TWC again approached Infosys and asked it to consider retaining four SFDC team members: Acclaim employee Timothy Blackwell and three subcontractors, Santhosh Nellutla, Pavan Jasthi, and Leslie Mendonca. Each of the four had non-compete agreements in place restricting their ability to work on this project for Infosys. Infosys knew that these four had previously worked for Acclaim, but did not know at the time that they were subject to non-competes.

Blackwell was hired directly by Infosys. In an initial email to Infosys, Blackwell stated directly "I do not have a non-compete clause with Acclaim." App. 189a. He also filled out an online employment application which asked whether he was subject to any contractual restrictions, including non-compete covenants, that might prevent him from working for Infosys in this role; he answered, "No." *Id*.[3] He began his employment in early September, 2013.

Nellutla, Jasthi, and Mendonca remained subcontractors, in part for immigration reasons, and remained with their direct employers, Global InfoTech, Inc. and SysIntelli,

---

[3] After the onset of litigation, Infosys wrote to Blackwell, asking him why he did not mention his non-competes during the hiring process. At that point, Blackwell claimed that TWC told him that he did not need to, because he had not signed anything in the previous year. There is no indication in the record that Infosys was aware of this alleged conversation.

Inc. Their hiring process, therefore, took a different path. First, an Infosys hiring manager, Sushobhan Suprabhat, spoke with the subcontractors, telling them, among other things, to verify that they were not subject to any non-compete agreements, and to report this to Raj Srinivasan, the Infosys project manager for the TWC SFDC work. Each of the three told Srinivasan that they were not subject to any non-compete. Srinivasan also asked Global and SysIntelli whether the subcontractors were contractually bound not to work for Infosys, and those employers likewise failed to inform Infosys of the non-competes.

With this information in hand, Infosys began to bring the subcontractors on board. It did so by routing the subcontracts through an approved Infosys vendor, VedaInfo, Inc., with which it had an ongoing relationship and contract. It is disputed whether VedaInfo conducted its own determination of whether the subcontractors were subject to non-competes. The subcontractors began working through Infosys as of October 1, 2013.

Meanwhile, TWC cancelled its contract with Acclaim, having now transferred the SFDC project to Infosys. The Acclaim contract could be cancelled at-will and TWC did not breach the contract.

On October 24, 2013, Acclaim filed suit in state court against Blackwell, Global and SysIntelli. Only after the state court litigation commenced did Infosys first learn of the non-compete agreements at issue.

## II.  PROCEDURAL HISTORY

In the course of motion practice, this suit has been substantially narrowed.  On a 12(b)(6) motion, the District Court dismissed plaintiff's claims of aiding and abetting a contractual breach.  That decision is not challenged on appeal.  Next, all claims against VedaInfo were dismissed by stipulation.  Acclaim also withdrew its claims of civil conspiracy.  Finally, the District Court granted summary judgment for Infosys on the remaining claim of tortious interference with contractual relations, finding for Infosys on three separate grounds.  This appeal, which is limited to the tortious interference claim, followed.

## III.  STANDARD OF REVIEW[4]

The Court of Appeals' review of a grant of summary judgment is "plenary" and the court should "apply the same test the district court should have utilized initially." *Giles v. Kearney*, 571 F.3d 318, 322 (3d Cir. 2009).  Summary judgment should be granted only when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "'[A]ll justifiable inferences are to be drawn in [the nonmovant's] favor,'" but the "mere existence of some evidence in support of the nonmovant is insufficient to deny a motion for summary judgment; enough evidence must exist to enable a jury to reasonably find for the

---

[4] The District Court had jurisdiction pursuant to 28 U.S.C. § 1332.  We have appellate jurisdiction pursuant to 28 U.S.C. § 1291.

nonmovant on the issue." *Giles*, 571 F.3d at 322 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

## IV.  ANALYSIS

Appellant's only remaining claim is for tortious interference with contractual relations.  Under Pennsylvania law,[5] this cause of action has four elements: "(1) the existence of a contractual relationship between the plaintiff and a third party; (2) purposeful action by the defendant, specifically intended to harm the contractual relationship; (3) the absence of privilege or justification on the part of the defendant; and (4) damages to the plaintiff as a result of the defendant's conduct." *Burton v. Teleflex Inc.*, 707 F.3d 417, 433 (3d Cir. 2013) (citation omitted).  Pennsylvania follows the Restatement (Second) of Torts in its analysis of tortious interference claims.  *Acumed LLC v. Advanced Surgical Servs., Inc.*, 561 F.3d 199, 215 (3d Cir. 2009).  The District Court granted summary judgment in this case on three independent grounds, finding that Appellant could not show a genuine dispute of material fact as to the second, third, or fourth elements of a tortious interference claim.  Our analysis begins, and ends, with the second element: intent, because the factors are conjunctive.

For a defendant to have specific intent to harm a contractual relationship, it must first have knowledge of that contractual relationship.  "Actual knowledge of the contract

---

[5] The District Court, *sua sponte*, raised the question whether this case should be heard under North Carolina law, but ultimately determined that there was no conflict between the laws of the two states.  The parties have identified no conflicts since and the case has proceeded entirely under Pennsylvania law without objection.

6

with which a defendant supposedly interfered is a prerequisite to making out a claim for tortious interference." *Mylan Inc. v. SmithKline Beecham Corp.*, 723 F.3d 413, 422 (3d Cir. 2013) (citations omitted);[6] *see also* Restatement (Second) of Torts § 766 cmt. i (1979) ("To be subject to liability under the rule stated in this Section, the actor must have knowledge of the contract with which he is interfering and of the fact that he is interfering with the performance of the contract."). Moreover, that knowledge must be specific to the particular contractual right upon which the defendant infringes. *Mylan*, 723 F.3d at 422 (citing *DiGiorgio Corp. v. Mendez & Co.,* 230 F. Supp. 2d 552, 564 (D.N.J. 2002)). The defendant need not know the specific terms of the contract. *See Posner v. Lankenau Hosp.*, 645 F. Supp. 1102, 1112 (E.D. Pa. 1986). Nevertheless, enough specificity is required that the defendant could be capable of intending to interfere with that right. *See Gianacopoulos v. MOS Design, Inc.*, No. CIV.A. 3:05-2417, 2008 WL 1774094, at *6 (M.D. Pa. Apr. 16, 2008) ("General knowledge of a business relationship is not sufficient; the defendant must have specific knowledge of the contract right upon which his actions infringe. However, the defendant need not have knowledge of the specific terms of the contract." (citations omitted)).

The parties agree that there is no direct record evidence that Infosys knew that any of the four SFDC team members it hired away from Acclaim had non-compete clauses.

---

[6] *Mylan* was decided under New Jersey law, but on this point was applying the Restatement, which both New Jersey and Pennsylvania have adopted.

Rather, the uncontested record evidence shows that Infosys asked each one whether they were subject to a non-compete and was told by each that they were not.

Appellant asserts that it can nevertheless show a genuine dispute about knowledge—and therefore intent—based on circumstantial evidence. Alternatively, it argues that it can, once again based on circumstantial evidence, show willful blindness as an alternative to actual knowledge. But this circumstantial evidence is insufficient to raise a genuine dispute of material fact as to knowledge, even drawing all reasonable inferences in Appellant's favor.

First, Appellant argues that Infosys asked the wrong questions about non-competes during its due diligence. According to Appellant, Infosys knew that Acclaim had contracted with Global and SysIntelli, not the subcontractors, and therefore Infosys should have asked Global and SysIntelli specifically about those contracts. Instead, it asked the subcontractors if they had any non-compete agreements and the intermediate contractors if they could keep their subs working on the TWC project. We can perceive no meaningful distinction between the inquiry that Infosys engaged in and the inquiry that Acclaim wishes Infosys had undertaken; in both cases, the ultimate question is whether the subcontractors were bound by non-competes. Moreover, even if this approach to questioning was improper, it would not show the existence of actual knowledge. The answer Infosys received was still, in no uncertain terms, that there were no obstacles to contracting with the four consultants.

8

Second, Appellant argues that restrictive covenants are standard in the IT consulting industry and that Infosys can therefore be presumed to have known that there were non-competes binding the four team members. But the record does not show that non-competes are universal, only "common policy." App. 224a. That these individuals might likely have been subject to non-competes is not the same as knowledge that they were subject to non-competes. This is all the more so because Infosys in fact inquired of these four individuals: from its perspective, whatever uncertain probability of non-competes existing was settled into a (false) certainty by asking and receiving an answer.

As the District Court correctly observed, both of these arguments attempt to create liability for negligent interference with contractual relations, which is not a tort under Pennsylvania law. *Aikens v. Balt. & Ohio R.R. Co.*, 501 A.2d 277, 278 (Pa. Super. Ct. 1985). Appellant argues that Infosys *should have* conducted better due diligence and *should have* made certain assumptions about industry practice, not that it *in fact* knew about the contracts in question.

Third, Appellant argues that VedaInfo conducted sham due diligence, serving only as a smokescreen to hide the fact that Infosys knew of the non-competes. Appellant points to the low hourly margin Infosys paid to VedaInfo as indicative of that sham role and raises questions as to what information was provided to VedaInfo and what was held back from them. We need not determine what role VedaInfo might have played in these events, however. Even if VedaInfo conducted insufficient due diligence—though we do not imply that the record so suggests and, indeed, the District Court found no such

9

evidence—Appellant's argument would still rely on pure speculation. Nothing in the record indicates that Infosys used VedaInfo, as a smokescreen or otherwise, because it knew of the non-competes. Infosys's use of a middleman could demonstrate its knowledge of the non-competes only if you assume that it used the middleman because it knew about the non-competes. Without more, this circular reasoning cannot create a genuine dispute of material fact. *Lexington Ins. Co. v. W. Pa. Hosp.*, 423 F.3d 318, 333 (3d Cir. 2005) ("Speculation does not create a *genuine* issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment." (quoting *Hedberg v. Ind. Bell Tel. Co.*, 47 F.3d 928, 932 (7th Cir. 1995))).

For the same reason, any attempt to substitute willful blindness for actual knowledge must also fail.[7] Willful blindness exists where "a person believes that it is probable that something is a fact, but deliberately shuts his or her eyes or avoids making reasonable inquiry with a conscious purpose to avoid learning the truth." *Prudential Real Estate Affiliates, Inc. v. Long & Foster Real Estate, Inc.*, 208 F.3d 210 (Table), 2000 WL 248170 at *5 (4th Cir. 2000) (addressing a tortious interference claim under the Restatement). Here, Infosys did not shut its eyes but made numerous inquiries. While Acclaim asserts that those inquiries were not reasonable, there is still no record evidence

---

[7] We do not here decide whether willful blindness can so substitute for knowledge in tortious interference cases generally. We declined to address that question in *Mylan*, 723 F.3d at 422. As in that case, we merely note the absence of sufficient evidence even to demonstrate willful blindness.

that Infosys had a conscious purpose to avoid learning the truth. The only evidence to that effect is Appellant's claim that Infosys conducted an unreasonable inquiry – which is once again speculative and circular.

Because there is no record evidence that Infosys actually knew that the four team members in question were covered by non-compete agreements, Appellant cannot survive summary judgment as to the second prong of a tortious interference claim. We need not reach the other prongs of the claim.

## V.    CONCLUSION

The District Court correctly determined that there was no genuine dispute of fact as to Infosys's actual knowledge of the non-compete agreements. We will therefore affirm.

11