**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 21-3117
_____

UNITED STATES OF AMERICA

v.

KEITH GANT,
                    Appellant
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-14-cr-00446-001)
U.S. District Judge:  Honorable Mitchell S. Goldberg
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
May 19, 2023
_____

Before:  SHWARTZ, MONTGOMERY-REEVES, and ROTH, <u>Circuit Judges</u>.

(Filed: August 31, 2023)
_____

OPINION*
_____

_____

    * This disposition is not an opinion of the full court and pursuant to I.O.P. 5.7 does
not constitute binding precedent.

SHWARTZ, Circuit Judge.

Keith Gant appeals his conviction on firearm and drug charges and his 211-month sentence. Because the prosecution did not improperly vouch for the Government's witnesses, we will affirm Gant's conviction. We will, however, vacate his sentence and remand because the District Court improperly calculated Gant's offense level under the United States Sentencing Guidelines.

I

A

In September 2013, Gant was seated in the passenger side of a vehicle driven by his acquaintance, D.H.,[1] when the vehicle was stopped by two police officers for failure to use a turn signal. The officers approached the vehicle, removed the two men, and observed an open backpack containing a firearm in plain view on the floor of the front passenger side. A search of the backpack revealed a loaded semi-automatic pistol, ammunition, approximately 175 packets of heroin, a crowbar, gloves, shoelaces, and a t-shirt.

Gant was arrested and charged with: (1) possession with intent to distribute heroin in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C); (2) possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1); and (3) possession of a firearm by a felon in violation of 18 U.S.C. § 922(g)(1). D.H. was not

_____

[1] The Government refers to the driver as D.H., while Gant refers to him as C.W. We will refer to him as D.H.

2

arrested that night but later pled guilty, pursuant to a cooperating plea agreement, to unrelated Hobbs Act conspiracy charges.

B

To establish that Gant possessed the backpack, the Government presented testimony from the two officers and D.H. The officers both testified that (1) when they approached the vehicle, Gant was reaching down toward where the backpack was eventually found, (2) Gant was "fidgety" during the interaction, App. 248, (3) they had to ask him to keep his hands visible multiple times, (4) they eventually removed him from the vehicle, and (5) the firearm was in plain view in the backpack.

Defense counsel sought to cast doubt on the officers' credibility. In both his opening and closing statements, counsel told the jury that the officers might "stretch the truth," with "the aim of getting a gun and drugs off the street," and implored the jury to consider whether the officers' alleged motives might be "reason to disbelieve everything that [the officers are] saying." App. 221. He also cross-examined the officers about alleged discrepancies between their direct testimony and the police reports filed after Gant's arrest, such as the fact that the reports did not indicate that the officers told Gant to keep his hands visible. In response, the prosecutor argued in her summation that, to credit the defense's theory, the jury would have to believe that the officers "risk[ed their] career[s]" by lying about the events leading up to Gant's arrest, App. 751-52, and, in her

rebuttal, explained that "stretching the truth for the[] officers would be perjury," App. 798.[2]

D.H. testified that he did not own the firearm or the heroin. He also testified that, on the night Gant was arrested, Gant (1) picked him up in Gant's vehicle, (2) they agreed D.H. would drive because he had a license, (3) D.H. asked Gant if Gant had a gun, (4) Gant responded that it was in the back of the vehicle, (5) D.H. told Gant to grab the gun from the back because he did not want to be charged with it if the police stopped them, and (6) Gant then moved the backpack to the floor of the front passenger side of the car where it was found.[3]

The prosecution addressed D.H.'s credibility issues in several ways. For example, the prosecutor elicited testimony from D.H. that (1) his plea agreement required him to tell the truth and would be void if he did not do so, (2) the judge overseeing Gant's trial would also sentence D.H. on his unrelated Hobbs Act conviction, and (3) D.H. had made pretrial "proffers" to the Government in which he told them he did not own the gun, App. 386.[4] At closing, the Government repeatedly stated that D.H. had to tell the truth

---

[2] The District Court overruled defense counsel's objection to these statements.

[3] D.H. also testified about several instances in which Gant disparaged him for cooperating with the prosecution, including one instance on the first day of the trial in which Gant called D.H. a "rat," App. 384-85, and another instance where he reminded D.H. that he knew D.H.'s address.

[4] The prosecution also attempted to preempt a potential avenue for impeaching D.H. by eliciting testimony from him about a fight he had at the jail with one of his Hobbs Act co-conspirators. The coconspirator accused D.H. of being a "rat" and threatened him and his family. App. 389-90. D.H. assaulted the coconspirator with a weapon but later lied to prison officials about using a weapon. At Gant's trial, D.H. testified that he acted in self-defense and that he lied to the prison officials because they might "expose [him] more" and subject him to further retaliation. App. 392.

4

pursuant to the plea agreement, emphasized that D.H. would be sentenced by the same judge overseeing Gant's trial, and, in rebuttal, suggested that D.H.'s testimony was consistent with what he had told the Government during his proffer sessions and, therefore, the jury could be sure that "he[ was] telling the truth." App. 801-02.  The jury found Gant guilty on all three counts.

C

At sentencing, the District Court determined that Gant's base offense level was twenty-four pursuant to § 2K2.1(a)(2) of the Guidelines because he had two prior felony convictions for crimes of violence.  The Court then applied a four-level increase under § 2K2.1(b)(6)(B) because Gant possessed the firearm during a drug trafficking crime and a two-level obstruction of justice enhancement pursuant to § 3C1.1 based on Gant's threatening statements to D.H.  Thus, the Court calculated a total offense level of thirty, which, when combined with Gant's criminal history category of III, resulted in a Guidelines range of 121 to 151 months' imprisonment on the § 841 and § 922(g) counts, plus a mandatory consecutive sixty-month term of imprisonment on the § 924(c) count. The Court sentenced Gant to 151 months' imprisonment plus the mandatory consecutive sixty-month term.

Gant appeals.

II[5]

Gant asserts that (1) the prosecution improperly vouched for the credibility of the

_____

[5] The District Court had jurisdiction pursuant to 18 U.S.C. § 3231.  We have jurisdiction pursuant to 28 U.S.C. § 1291.

5

officers and D.H. at trial, and (2) the District Court miscalculated his total offense level at sentencing. We address each claim in turn.

A

We begin with Gant's vouching claims. "A prosecutor improperly vouches when he (1) assures the jury that the testimony of a government witness is credible, and (2) . . . bases his assurance on either his claimed personal knowledge or other information not contained in the record." United States v. Lore, 430 F.3d 190, 211-12 (3d Cir. 2005); see also United States v. Brennan, 326 F.3d 176, 183 (3d Cir. 2003). Vouching poses two dangers: it "convey[s] the impression that evidence not presented to the jury, but known to the prosecutor, supports the charges against the defendant and can thus jeopardize the defendant's right to be tried solely on the basis of the evidence presented to the jury," and the prosecutor's statements carry "the imprimatur of the Government and may induce the jury to trust the Government's judgment rather than its own view of the evidence." United States v. Young, 470 U.S. 1, 18-19 (1985).

1[6]

The prosecutor did not improperly vouch for the officers when she stated, in her closing and rebuttal, that the officers would be risking their careers if they lied on the stand. When the credibility of officer testimony is attacked, the response that officers might face professional consequences if they lie on the stand is an "obvious," "common

---

[6] Because Gant objected at trial to the prosecutor's statements, we review this claim for harmless error. United States v. Weatherly, 525 F.3d 265, 273 (3d Cir. 2008); see Fed. R. Crim. P. 52(a).

6

sense" inference that need not be supported by "admitted evidence of discipline affecting the[] officers' careers." United States v. Bailey-Snyder, 923 F.3d 289, 295-96 (3d Cir. 2019). Thus, because defense counsel attacked the officers' credibility in his opening statement and cross-examination, the prosecutor acted appropriately by identifying the logical consequences the officers would face if they were to lie, and she did not need to adduce evidence to support the existence of the adverse consequences.[7]

2[8]

The prosecutor also did not improperly vouch for D.H when she (1) referred to the truth-telling provision in D.H.'s plea agreement, (2) stated the judge overseeing the trial would sentence D.H., and (3) explained that D.H.'s proffer sessions were consistent with his trial testimony. These lines of argument were permissible because the trial record supported them. See United States v. Saada, 212 F.3d 210, 225 (3d Cir. 2000) (holding

---

[7] Gant's argument that the prosecutor's statements in her closing argument regarding the officers' credibility were premature because she made them before defense counsel attacked the officers' credibility in his own closing lacks merit. As discussed above, throughout the trial, Gant's counsel repeatedly implored the jury to disbelieve the officers' testimony, starting with the suggestion in his opening statement that the officers might "stretch the truth." App. 221. Thus, the prosecutor reasonably anticipated defense counsel's attack on the officers' credibility and properly addressed that attack in her closing argument.

[8] Because Gant did not object to the prosecutor's statements regarding D.H. at trial, we review his claims for plain error, Fed. R. Crim P. 52(b); United States v. Harris, 471 F.3d 507, 512 (3d Cir. 2006), and he must show: "[(]1) the court erred; [(]2) the error was obvious under the law at the time of review; and [(]3) the error affected [his] substantial rights," United States v. Bernard, 373 F.3d 339, 341 (3d Cir. 2004) (quoting Johnson v. United States, 520 U.S. 461, 467 (1997)). If all three prongs are met, we may exercise our discretion to award relief if the error "seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." United States v. Olano, 507 U.S. 725, 736 (1993) (quotations and citation omitted).

that the prosecutor's argument that two witnesses were testifying truthfully because they were required to do so under cooperation agreements did not constitute improper vouching because the prosecutor "grounded his comments on the evidence presented at trial"); United States v. Rivas, 493 F.3d 131, 138 (3d Cir. 2007) (explaining that a statement in closing argument that the Government's witnesses told the truth was not improper vouching because "the prosecution did not suggest it knew from extra-record evidence that [the witnesses] were telling the truth").[9]  Thus, the prosecution did not improperly vouch for D.H. using extra-record evidence of his truthfulness.[10]

As such, the prosecution did not improperly vouch for the Government's witnesses, and so we will affirm Gant's conviction.[11]

---

[9] Gant also argues that the prosecutor's statements implied that the Government and the District Court had an extra-record method for guaranteeing that D.H. complied with his agreement by telling the truth but nothing in the prosecutor's statements suggested "that the [G]overnment[ and the Court's] evaluation of the witnesses' testimony would be based on anything other than the testimony at trial."  Saada, 212 F.3d at 225.

[10] The prosecutor's statement in her opening that D.H. "will tell . . . the truth," was also not improper vouching because the prosecutor went on to say D.H. would give the jury "all of the reasons why when you're deliberating you can believe him despite the fact that he'll admit to being a violent convicted criminal."  App. 209.  Thus, the prosecutor did not opine that D.H.'s testimony was truthful but rather informed the jury that it would be able to believe D.H. based on the trial evidence.  See Rivas, 493 F.3d at 138.

[11] Contrary to Gant's assertion, D.H.'s testimony regarding the prison altercation and his encounter with Gant on the first day of trial was admissible and, therefore, Gant's improper bolstering claim based on this testimony fails.  First, D.H.'s testimony was not hearsay because, although he relayed out-of-court statements made by others who threatened him for cooperating with the Government, those statements were not offered for their truth but rather for their effect on D.H.  See United States v. Edwards, 792 F.3d 355, 357 n.2 (3d Cir. 2015) (observing that statements offered to show an "effect on the listener" are not hearsay because they are "not offered for their truth").

8

B[12]

The parties agree that the District Court plainly erred in its calculation of Gant's

Guidelines offense level.  United States v. Felton, 55 F.3d 861, 869 n.3 (3d Cir. 1995)

(stating that a "miscalculation of a defendant's offense level . . . amounts to plain error")

(quotation omitted); see also United States v. Knight, 266 F.3d 203, 207 (3d Cir. 2001)

(holding that the use of an erroneous Guidelines range presumptively prejudices the

defendant).

First, the District Court erred by concluding that Gant's base offense level was

twenty-four pursuant to § 2K2.1(a)(2).  That provision applies when a defendant has two

prior felony convictions for crimes of violence.  U.S.S.G. § 2K2.1(a)(2).  Because Gant's

two prior convictions were not separated by an intervening arrest and the sentence for

each conviction was imposed on the same day, they qualify as one conviction for

---

Second, Federal Rule of Evidence 608(a) did not bar D.H.'s testimony regarding the prison altercation because it was not offered to show D.H.'s character for truthfulness; rather it suggested untruthfulness because he admitted to lying to the prison officials.  See Fed. R. Evid. 608(a).  Under Rule 607, the Government had the right to offer this testimony on direct to preempt the impeachment of D.H. on cross.  Fed. R. Evid. 607 ("Any party, including the party that called the witness, may attack the witness's credibility."); see also Inventive Music Ltd. v. Cohen, 617 F.2d 29, 33 (3d Cir. 1980) (recognizing that Rule 607 "abandon[ed] the restriction on impeaching one's own witness").

Finally, the testimony did not prejudice Gant under either Rule 404(b) or Rule 403 because it did not link Gant to D.H.'s co-conspirators in the unrelated Hobbs Act conspiracy to Gant and, therefore, did not indicate Gant was a violent person or that he had a propensity for committing crimes.

[12] Because Gant did not object to the Guidelines calculation at sentencing, we review his argument that the District Court miscalculated the Guidelines offense level for plain error.  United States v. Knight, 266 F.3d 203, 206 (3d Cir. 2001) (citing Fed. R. Crim. P. 52(b)).

9

Guidelines purposes. U.S.S.G. § 4A1.2(a)(2); see also U.S.S.G. § 2K2.1(a)(2) cmt. n.10 (directing courts to use § 4A1.2(a)(2)'s definitions when determining whether felony convictions should be counted separately under § 2K2.1(a)(2)). Thus, the Court plainly erred by viewing them as two separate convictions and using a base offense level of twenty-four under § 2K2.1(a)(2).

Second, the District Court plainly erred by applying the four-level enhancement under § 2K2.1(b)(6)(B). That enhancement applies when a defendant possesses a firearm during "another felony offense," U.S.S.G. § 2K2.1(b)(6)(B)—in Gant's case, heroin trafficking. The enhancement, however, does not apply where the defendant is also subject to § 924(c)'s statutory mandatory minimum. U.S.S.G. § 2K2.4(b). Because Gant was subject to § 924(c)'s mandatory minimum, the four-level enhancement under § 2K2.1(b)(6)(B) was not applicable.

Thus, because these two errors could change Gant's Guidelines range, they "seriously affect[ed] the fairness, integrity, [and] public reputation" of the proceedings, United States v. Olano, 507 U.S. 725, 736 (1993) (quotations and citation omitted), and we will therefore vacate his sentence and remand for resentencing.

III

For the foregoing reasons, we affirm Gant's conviction, vacate his sentence, and remand.

10